MYRON, Appellant, v. FROST, et al, Respondents.

(220 N. W. 149.)

(File No. 6505. Opinion filed June 30, 1928.)

*McNulty, Williamson & Smith,* of Aberdeen, and *C. G. Carrell,* of Lemmon, for Appellant.

*Thomas McInerny,* of Elk Point, for Respondents.

BROWN, J. Charles A. Frost, a resident of Union county, died on January 8, 1926, and left an estate consisting of land and personal property valued at approximately $75,000. He was a bachelor and his surviving heirs were six brothers and sisters. Appellant, whose name was then Bessie Gallagher, attended the university at Vermillion from the fall of 1912 to the spring of 1913. She was then about 20 years of age. When the university closed for the summer in 1913 she went to work for Mr. Frost, taking care of his books and doing typewriting and continued in this employment until the spring of 1914, during a part of which time Mr. Frost was absent in North Carolina. In August, 1916, appellant was married to Arthur O. Myron, who was a superintendent of schools.

On February 15th, 1926, Frost's sister Eva was appointed administratrix of his estate, and on July 10th appellant, Bessie Myron, presented to the court a petition for the probate of an alleged olographic will. The heirs contested, and the county court denied probate of the alleged will. Bessie Myron appealed to the circuit

court, where a jury trial was had, and the jury returned a verdict that the instrument was not the will of Charles A. Frost. The court treated the verdict as advisory, made findings of fact and conclusions of law against appellant, and judgment was entered denying probate; and from the judgment and an order denying a new trial, Bessie Myron appeals to this court.

The instrument which appellant claims is the will of deceased reads as follows:

"Alcester, S. D., May 21, 1914.
"C. A. Frost
"Two the one in chg of my property (10 days after my death) Pay to B. Gallagher, $15,000 and no/100 for staying home from the University promised to her by me, C. A. Frost, Pay 10 days after my death and save costs as there will be no more time given.
"from C. A. Frost
for B. Gallagher
"time May 21-1914
"C. A. Frost

"Care of Wm. Gallagher"

Appellant testified that she and Clara Lass were going along the street in Alcester on May 21, 1914, and when passing in front of deceased's store he asked them to come in, and in their presence he wrote this paper, all in his own handwriting, and delivered it to appellant, and at the same time wrote out and gave to Clara Lass another paper which reads as follows:

"Alcester, S. Dak., May 21, 1914
"C. A. Frost
"To the one in chg of my property 10 days after my death Pay to B. Gallagher $15,000.00 in cash promised to her by me (C. A. Frost) 10 days after my death for staying home from school with her mother and save costs as there will be no more time given. "C. A. Frost
"C. A. Frost."

On back:
"Two (B.) Gallagher
"C. A. Frost"

—and told her to preserve it so that they would have it in case appellant lost hers.

Clara Lass told substantially the same story as to the execution and delivery of these two instruments, and also testified that on July 7, 1915, she and appellant were in a car in front of deceased's store in Alcester and that he shook hands with them and asked them to come into the store, and that he wrote up two other documents similar in contents to the purported will, one of them written wholly in his own handwriting and the other on a typewriter; that he signed those in her presence and gave one to each of them, remarking that it was a renewal of the first one because appellant wanted to go back to school; one of these instruments is produced in evidence and reads as follows:

"Alcester, S. D., May 21, 1914.

"To the one in charge of my property, C. A. Frost, Pay, B. Gallagher, $15,000, fifteen thousand dollars for me, C. A. Frost, for her staying from school (fifteen thousand dollars for staying from University school). Promised two B. Gallagher by me, C. A. Frost (10 days after my death).

"dated May 21, 1914.

"two twenty five P. M. Alcester, S. D.

"C. A. Frost

"C. A. Frost
    "By
  "C. A. Frost
"C. A. Frost."

On back:

"For B. Gallagher
   from    School
        "C. A. Frost
"Renud in July nineteen fifteen          C. A. Frost
    "C. A. Frost
    "For my will
    "C. A. Frost"

Arthur O. Myron, appellant's husband, testified that along with his wife he was in deceased's place of business in August or September, 1917, and appellant then told deceased that her husband intended to enter an officers' reserve camp for service in the war, and she said that she regretted that she had not continued going to school because in that case she could have gone out and taught;

that deceased told her not to worry about that because he had enough for both of them and he would see that she was taken care of, and asked her if she still had those papers that he had given her; that about the middle of August, 1925, he and his wife met Mr. Frost in Beresford, and that he came up and shook hands with them and asked Mrs. Myron if she still had those papers; that she asked if he wanted them, and he said, "No," but he did not think he was going to live very long and she had better hang on to them. He also testified that the papers marked "Exhibits 5 and 6" came through the mail in envelopes addressed to his wife about the time of their respective dates, when they lived in Lemmon, S. D. Exhibits 5 and 6 are as follows:

Exhibit 5.

"Alcester, Sept. 18, 1925.

"C. A. Frost

"Keep this book, for, time after, my, death, credit, by my note and will, C. A. Frost (C. A. Frost) (B. Gallagher) C. A. Frost ($15,000 Acct.) (fifteen thousand dollars and no cents) for staying home.

"C. A. Frost

"C. A. Frost                            C. A. Frost

"C. A. Frost Sept. 17 two thirty P. M."

Exhibit 6.

Front:

"Farmers & Merchants National Bank
"Alcester, S. Dak., Oct. 15, 1925

"No. ——————

"Pay to B. Gallagher . . . . . . . . or order $15,000.00 fifteen thousand dollars and no/cent Dollars

"C. A. Frost      C. A. Frost

Back:

"Given Oct. 15-1925
"Nineteen twenty five    C. A. Frost
                     "C. A. Frost
                     "C. A. Frost

"Hold this Jan. 21st 21, 1926"

On behalf of defendants nine witnesses testified to being familiar with deceased's handwriting and signature and that they did

not believe the purported will was in deceased's handwriting or signed by him. One of these was August Frieburg, who was attorney for the estate and testified that he had known the deceased since 1892 and had had many business transactions with him; had seen him write his name a large number of times, that deceased was a good, hard-headed business man, that he farmed about 550 acres of land, carried on an extensive business in Alcester, at times had quite a few men employed, and that in his opinion the purported will was not in the handwriting of Frost nor was the signature his. Edward Jenkins testified that he had known deceased for 35 years, was employed by him from the fall of 1912 until the summer of 1915, that he worked in his implment house setting up machinery and had seen Mr. Frost write his name and knew his handwriting, and that in his opinion the purported will was not in the handwriting of Frost nor was the signature his. Frank Hampton also worked for deceased from 1912 to the summer of 1915; he said that he had seen Frost write his name quite a number of times, had seen him write other papers while he worked for him and that in his opinion none of the writing in the purported will was Mr. Frost's nor were the signatures on either front or back of it that of deceased. This witness further testified that in the spring of 1914, on Mr. Frost's return from the South where he had been through the winter months, appellant and her father and mother were in Frost's store, and he heard some loud talking, and appellant was crying, and Mr. Frost told her that he could not use her any longer.

There is nothing in the record that shows any particular friendship between appellant or any of her family and Mr. Frost, nor is there any reason disclosed why he would make her a bequest of $15,000 for staying out of school, as it does not appear that he contemplated employing her, or had any other reason for desiring her to stay out of school.

H. W. Lind, assistant cashier in the Farmers' & Merchants' National Bank at Alcester, testified that he had seen Mr. Frost write and sign checks, and that in his opinion the purported will was not in the handwriting of Frost nor were the signatures on either the face or back of it his. C. A. Abeel, county treasurer of Union county, and who had been assistant cashier in the State Bank of Alcester and also in the Farmers' & Merchants' National

Bank, testified that he was familiar with Frost's handwriting and signature, and that in his opinion the purported will was not in Frost's handwriting nor were the signatures thereon his. Victor O. Larson, president of Farmers' & Merchants' National Bank, gave similar testimony, as did A. A. Treick, manager of the J. H. Queal Lumber Company, who also had been employed in the Farmers' & Merchants' Bank, and E. F. McKellips, president of the State Bank of Alcester, who testified to having seen Mr. Frost write his name many times, and also saw him write many other instruments, and both testified that in their opinion the purported will was not in the handwriting of Charles A. Frost nor were the signatures on it made by him.

The only question argued on the appeal is the insufficiency of the evidence to justify the decision of the trial court. While two witnesses testify to having seen the deceased write and sign the purported will, one of these witnesses, the appellant, is financially interested in the outcome, and, while the record does not disclose any financial interest on the part of Clara Lass, the testimony of nine witnesses, each of whom had seen the deceased write and sign his name frequently and who all testified that in their opinion the writing and signature of the purported will was not that of the deceased, is certainly sufficient to raise a serious conflict upon the evidence as to whether or not the instrument is genuine. That a number of the witnesses for defendants testified that indorsements of the name of the deceased on checks which had been paid by banks were not in their opinion the genuine signature of deceased was a matter which affects only the weight of their testimony. On the whole record we cannot say that the clear preponderance of the evidence is against the finding of the trial court, and the judgment and order appealed from are affirmed.

BURCH, P. J., and POLLEY, SHERWOOD, and CAMPBELL, JJ., concur.